UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                              Chapter 11

Luigi Zucaro
*aka* Louis Zucaro,                                                 Case No. 14-41440-nhl

                        Debtor.
----------------------------------------------------------X

## <u>DECISION AND ORDER ON MOTION FOR SANCTIONS</u>

**<u>Appearances:</u>**

Douglas J. Pick                          Steven R. Schoenfeld
Eric C. Zabicki                          DelBello Donnellan Weingarten
Pick & Zabicki LLP                       Wise & Wiederkehr LLP
369 Lexington Avenue                     One North Lexington Ave
12th Floor                               11th Floor
New York, NY 10017                       White Plains, NY 10601
                                         *Attorneys for Opposition*

Jay H. Berg
Cornicello Tendler & Baumel-Cornicello
Two Wall Street
20th Floor
New York, NY 10005
*Attorneys for Debtor*

HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

Before the Court is the motion of Patsy Fierro ("Fierro"), an individual chapter 11 debtor, and Denise Zucaro ("Zucaro"), acting as the Executor of the Estate of Luigi Zucaro a/k/a Louis Zucaro, initially an individual chapter 11 debtor but now deceased (together, the "Debtors" or "Movants"), for sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Rule 9011") against J.C. Ryan EBCO/H&G LLC ("J.C. Ryan") and it's prior lead counsel Monica Kipiniak ("Kipiniak"). *See* Motion for Sanctions, Case No. 14-41439-nhl, ECF No. 322; Motion for Sanctions, Case No. 14-41440-nhl, ECF No. 270.[1]

The Movants assert that J.C. Ryan and Kipiniak are subject to sanctions under Rule 9011 for failing to withdraw J.C Ryan's proofs of claim in each of the Debtors' bankruptcy cases (the "Proofs of Claim"), and for failing to withdraw complaints filed in adversary proceedings brought in each of the Debtors' bankruptcy cases seeking to render the alleged debt owed to J.C Ryan non-dischargeable (the "Non-Dischargeability Actions"). J.C. Ryan and Kipiniak (the "Opposition") filed an objection (the "Objection")[2], which was followed by two hearings before the Court.

For the reasons set forth below, the Court denies the Debtors' Motion for Sanctions under Rule 9011.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by order dated December 5,

---

[1] The motions are based on the same set of facts and allegations, and the parties are identical (together the "Motion" or the "Motion for Sanctions").

[2] *See* Case No. 14-41439-nhl, ECF No. 333; Case No. 14-41440-nhl, ECF No. 280.

2

2012, of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

### I.    <u>Prepetition State Court Litigation</u>

On May 19, 2003, J.C. Ryan, through its counsel Richard Yellen, filed a class-action complaint in the Supreme Court of the State of New York, County of Kings[3] (the "State Court") against Cyber-Struct Inc.[4], Fierro, Zucaro, and Damon Coromilas (the "State Court Defendants").[5] Decl. of Steven Schoenfeld, Case No. 14-41439-nhl,  ECF No. 330; Case No. 14-41440-nhl,  ECF No. 277 (hereinafter "Schoenfeld Decl."), Ex. 1. The class-action complaint alleged that the State Court Defendants violated New York's Lien Law by wrongfully diverting funds and failing to pay various suppliers and subcontractors in connection with a real estate construction project (the "Project"). *See id.* After two years of litigation, J.C. Ryan moved for summary judgment, and the State Court Defendants failed to respond. As such, on May 12, 2008, the State Court issued a default judgment against the State Court Defendants totaling $619,289.92 (the "Default Judgment"). Schoenfeld Decl. Ex. 13.

The Debtors have continuously asserted that the Default Judgment was procured through fraud. Specifically, the Debtors assert that beginning in April of 2002, Dean Boerum Owners ("DBO"),  owner of the Project, and J.C. Ryan, a subcontractor on the Project, "intentionally and

---

[3] The case was captioned as *J.C. Ryan EBCO/H&G LLC, on behalf of itself and all other subcontractors similarly situated  v. Cyber-Struct, Inc., Louis Zucaro a/k/a/ Lou Zucaro a/k/a Louie Zucaro, Patrick Fierro a/k/a Patsy Fierro a/k/a Pat Fierro and Damon Coromilas*, Index No. 18549/03 (hereinafter the "State Court Action").
[4] Cyber-Struct Inc. was a general contractor whose principals were Fierro and Zucaro.
[5] The Court takes judicial notice of the state court filings, decisions, and orders, many of which were attached as exhibits to the Schoenfeld Declaration.

knowling[ly] conspired to give the Default Judgment and the underlying class action . . . the appearance of a *bona fide* collective action" but that DBO and its counsel, Richard L. Yellen & Associates LLP ("Yellen & Associates"), were "intended to be the sole beneficiaries of the State court proceedings." Motion ¶ 5. The Debtors contend that it is undisputed that eight of the alleged nineteen class members assigned their claims to DBO prior to the lawsuit (the "Assignments"), that there was never an actual "class" of subcontractors and suppliers, and that the "class members" were never notified of the State Court Action or entry of the Default Judgment. *Id*. ¶ 7. The Debtors also argue that prior to commencing the class-action lawsuit, J.C. Ryan released its claims against the Debtors and Cyber-Struct Inc. pursuant to a general release. *Id.*

The Opposition vehemently disagrees with the Debtors' view that the facts underlying the Default Judgment are "undisputed." Hrg Tr. 2/28/19, 19:25-20:1 ("[The issues are] disputed as a matter of fact and as a matter of law."). For example, the Opposition contends that J.C Ryan did not assign its whole claim – "it only assigned a right to part of its claim." Hrg Tr., 2/28/19, 22:7-10. The Opposition also asserts that J.C. Ryan did not waive its claims against the Debtors or Cyber-Struct Inc., and that Yellen & Associates made proper disclosures to the State Court regarding class members and any alleged Assignments.  Objection, p. 3-4.

In February 2013, the State Court Defendants sought to vacate the Default Judgment, which request was denied on September 20, 2013. Schoenfeld Decl. Ex. 16–17. A second attempt to vacate the Default Judgment was denied on February 28, 2014.  *Id*. Ex. 18, 22.

## II.    **The Bankruptcy Filings, Proofs of Claim, and Post-Petition State Court Action**

On March 27, 2014, Fierro and Zucaro each filed voluntary chapter 11 petitions[6] and removed the State Court Action to this Court which created two related adversary proceedings (the "14-01068 and 14-01087 Adversary Proceedings"). On May 12, 2014, J.C. Ryan, through its initial bankruptcy counsel, Samantha Litt, Esq. of the Law Offices of Bernard D'Orazio & Associates, P.C, filed an individual Proof of Claim in each of the Debtor's bankruptcy cases based on the Default Judgment, which totaled, with interest, $946,584.59. Motion ¶ 14. On September 24, 2014, the Debtors objected to the Proofs of Claim on the theory that they were based on a Default Judgment procured through fraud. *Id.* ¶ 15; Claim Obj., Case No. 14-41439-nhl, ECF No. 49; Claim Obj., Case No. 14-41440-nhl, ECF No. 46.

Shortly thereafter, on October 31, 2014, A. Scott Madelup, Esq. of Pryor & Madelup LLP, who had been substituted as bankruptcy counsel a few weeks prior, commenced adversary proceedings in each of the Debtor's bankruptcy cases by filing complaints objecting to the dischargeability of the debt allegedly owed to J.C. Ryan (the "Non-Dischargeability Actions"). Complaint, Adv. Pro. No. 14-1142-nhl, ECF No. 1; Complaint, Adv. Pro. No. 14-1143-nhl, ECF No. 1. Counsel to J.C. Ryan argued that J.C. Ryan's debt was non-dischargeable under 11 U.S.C § 523(a)(4) because the Debtors engaged in defalcations while acting as fiduciaries and committed larceny, fraud, and embezzlement. *See* Complaint, Adv. Pro. No. 14-1142-nhl, ECF No. 1; Complaint, Adv. Pro. No. 14-1143-nhl, ECF No. 1. The Debtors responded by raising affirmative defenses including that J.C. Ryan lacked standing, the Default Judgment was procured through

---

[6] The Court takes judicial notice of the filings in the Debtors' bankruptcy cases. *See* Case No. 14-41439-nhl; Case No. 14-41440-nhl.

5

fraud, and the Debtors' obligations to J.C. Ryan and the alleged class members were assigned to DBO for good and valuable consideration. *See* Answer to Complaint, Adv. Pro. No. 14-1142-nhl, ECF No. 4; Answer to Complaint, Adv. Pro. No. 14-1143-nhl, ECF No. 4.

On May 29, 2015, this Court entered an order (i) abstaining from hearing the State Court Action under the doctrine of permissive abstention, (ii) remanding the State Court Action and (iii) lifting the automatic stay to the extent necessary for the Debtors to prosecute and J.C. Ryan to defend a pending motion in the State Court to vacate the Default Judgment. *See* Order Granting Motion for Remand, Case No. 14-41439-nhl, ECF No. 107; Order Granting Motion for Remand, Case No. 14-41440-nhl, ECF No. 96.

On September 2, 2015, this Court held a hearing at which Kipiniak appeared telephonically, although she was not yet counsel of record. At this hearing, Debtors' counsel disclosed it had "three (3) affidavits with not less than two (2) more affidavits expected to be signed evidencing the fraud." Motion ¶ 16.

On September 8, 2015, Pryor & Mandelup LLP withdrew as counsel to J.C. Ryan, and Kipiniak was substituted. *See* Withdrawal Order, Case No. 14-41439-nhl, ECF No. 134; Withdrawal Order, Case No. 14-41440-nhl, ECF No. 116. Soon after Kipiniak's retention, on September 24, 2015, the State Court rendered another decision denying the Debtors' motion to vacate the Default Judgment, and specifically found that the "motion to vacate the judgment pursuant to CPLR 5015 based upon fraud is also denied." Schoenfeld Decl. Ex. 20.

Notwithstanding this decision, the Debtors sent Kipiniak a letter on November 16, 2015 demanding that she withdraw the Proofs of Claim and the Non-Dischargeability Actions (the

"Demand Letter"). Motion Ex. B. Despite the Demand Letter, nothing was withdrawn and Kipiniak continued representing J.C. Ryan in the bankruptcy cases and adversary proceedings.

In January 2016, Kipiniak represented Alan Rosenthal, the controller for J.C. Ryan, at a deposition. The Debtors state that Kipiniak attempted to "hide the disclosure of facts that would hurt her client" and hindered testimony. *Id.* ¶ 23. Moreover, the Debtors argue that Kipiniak failed to disclose all available discovery in J.C. Ryan's possession because at the deposition, Rosenthal stated that he was unaware of certain discovery requests. *Id.* ¶ 24. However, when Debtors' counsel subsequentially emailed Kipiniak about this statement, she replied that she refreshed Rosenthal's memory after the deposition, and he "confirmed that he was in error in recalling that he had not seem [sic] [the request] before." Motion Ex. C. She further affirmed "there is nothing more to produce." *Id.*

On September 13, 2016, Debtor Patsy Fierro filed a summary judgment motion, seeking to expunge J.C. Ryan's Proof of Claim in his bankruptcy case. Case No. 14-41439-nhl, ECF No. 241. Kipiniak filed an opposition on October 13, 2016, arguing that "J.C. Ryan's proofs of claim were based on a valid State Court judgment that had been repeatedly affirmed by the State Court." Schoenfeld Decl. ¶ 67; *see* Case No. 14-41439-nhl, ECF No. 254. While Kipiniak signed this document, she never presented it to the Court because on October 19, 2016, DelBello Donnellan Weingarten Wise & Wiederkehr LLP ("DelBello") took "over the lead as counsel for J.C. Ryan . . . including [at] all hearings since then." Schoenfeld Decl. ¶ 68.[7] Although Kipiniak stepped down

---

[7] It should be noted, however, that Kipiniak appeared, but did not argue, at hearings on October 20, 2016 and November 4, 2016.

as lead counsel, she never filed a notice of withdrawal in the bankruptcy cases or the Non-Dischargeability Actions.

On October 31, 2016, Justice Baynes of the State Court signed a short form order vacating the Default Judgment. Case No. 14-41439-nhl, ECF No. 308, Ex. A. Approximately one month later, Justice Baynes issued a decision and order granting the Debtors' motion to disqualify Yellen & Associates, counsel to J.C. Ryan in the State Court Action. Case No. 14-41439-nhl, ECF No. 308, Ex. C. Thereafter, on December 14, 2016, the State Court issued a decision and order vacating and recalling the Default Judgment. Schoenfeld Decl. Ex. 47. While the basis of the Default Judgment vacatur is unclear, the State Court did not vacate the judgment based on fraud; rather, the order provides that "at the time the default Judgment was entered as to the Moving Defendants, there was a statutory bankruptcy stay in effect and had the Court (Lewis, J) been aware of that stay, it would not have granted the default Judgment." *Id*. The Opposition identifies the vacatur as a "Mistaken Vacatur Order," since "there had not been any bankruptcy stay and Judge Baynes' reason for vacating the May 12, 2008 judgment was based an [sic] incorrect fact." *Id.* ¶ 77–78. On December 14, 2017, the State Court modified the December 14, 2016 order by deleting the reference to the statutory bankruptcy stay, but left in place the order vacating the Default Judgment. *Id*. Ex. 48.

On April 28, 2018, the Debtors formally served the Motion for Sanctions on the Opposition, and thereafter filed the Motion on the docket on June 8, 2018.[8]

---

[8] The Motion was held in abeyance for some time pending clarification of the activity in State Court.

8

On July 11, 2018, DelBello filed a notice to dismiss the Non-Dischargeability Actions. Notice to Dismiss, Adv. Pro. No. 14-1142-nhl ECF No. 45; Notice to Dismiss, Adv. Pro No. 14-1143-nhl, ECF No. 58. The Non-Dischargeability Actions were closed on July 18, 2018.

Also on July 11, 2018, DelBello filed a motion to withdraw J.C. Ryan's Proofs of Claim on a provisional basis. *See* Motion to Withdraw, Case No. 14-41439-nhl, ECF No. 327; Motion to Withdraw, Case No. 14-41440-nhl, ECF No. 273. That motion was disposed of on September 28, 2018, when this Court entered an order expunging the Proofs of Claim, but directed that if the vacated Default Judgment was reinstated by a final order, J.C. Ryan could move to reinstate the Proofs of Claim. Order Expunging Proof of Claim, Case No. 14-41439-nhl, ECF No. 344; Order Expunging Proof of Claim, Case No. 14-41440-nhl, ECF No. 291.

J.C. Ryan filed several appeals in the State Court, Appellate Division, seeking to reverse the state court decisions (i) vacating the Default Judgment, (ii) disqualifying Yellen & Associates, (iii) de-certifying the class of alleged creditors, and (iv) correcting the text of the December 14, 2016 order. Case No. 14-41439-nhl, ECF No. 379; Case No. 14-41440-nhl, ECF No. 320 (hereinafter "Letter of Chronology of State Court Filings and Appeals"). These four appeals, which were combined under one record of appeal, have been fully briefed and have been marked submitted at the Appellate Division (the "State Court Appeals"). *See* Hrg. Tr. 2/25/20, 17:5-10.

Interestingly, in July 2019, J.C. Ryan failed to comply with orders from the State Court directing that it file a Notice of Issue. *See* Letter of Chronology of State Court Filings and Appeals. In response, the Debtors filed a motion to dismiss the State Court Action, and oral argument was held on January 22, 2020. *See id.* The motion was granted and the State Court entered a Stipulated Short Form Order dismissing the State Court Action with prejudice. *See id.*

9

Shortly thereafter, the Plaintiffs filed a motion to dismiss the State Court Appeals, contending that the dismissal of the State Court Action with prejudice renders the State Court Appeals moot. *See* Hrg. Tr. 2/25/20, 9:22-24, 17:5-10. On February 18, 2020, the motion was marked submitted in the Appellate Division. *See* Hrg. Tr. 2/25/20, 9:22-24, 17:5-10.

## LAW

Rule 9011(b) which parallels Rule 11(b) of the Federal Rules of Civil Procedure, provides that:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions had evidentiary support or, if specifically, so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically, so identified, are reasonably based on a lack of information or belief.[9]

Fed R. Bank. P. 9011(b).

Rule 9011 grants a bankruptcy court the authority to sanction an attorney, an attorney's client, or both. *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1343–44 (2d Cir.1991). An attorney must determine, by independently verifying publicly available facts, that the client's

---

[9] "Rule 9011 is the bankruptcy counterpart of Federal Rule of Civil Procedure 11. Because Rule 9011 conforms to Civil Rule 11, precedents that have been and will be developed under the latter will be of significant assistance in interpreting the former." 10 Collier on Bankruptcy P 9011.02.

representations are "***objectively reasonable*** and investigate further, if any inconsistencies are raised, by asking questions, obtaining additional documents, or by some other means." *In re Beinhauer*, 570 B.R. 128, 137 (Bankr. E.D.N.Y. 2017) (emphasis added). What is "objectively reasonable" is measured by what a competent attorney admitted to practice before the court would do. *Orton v. Kayne* (*In re Kayne*), 453 B.R. 372, 381–82 (9th Cir. BAP 2011).

In the Second Circuit, the standard for imposing sanctions under Rule 9011(b) requires that a party "has submitted a claim that has no chance of success under existing precedents and that fails to advance a reasonable argument to extend, modify or reverse the law as it stands." *In re Cohoes Indus. Terminal*, *Inc*., 931 F.2d 222, 227 (2d Cir. 1991) (internal quotations omitted). It must be "patently clear that a claim has absolutely no chance of success." *In re Spectee Group, Inc*., 185 B.R. 146, 159 (Bankr. S.D.N.Y. 1995) (internal quotations omitted). Even if a claim is ultimately disproved, it cannot be the basis of Rule 9011 sanctions if there was some legal or factual basis to bring the claim. *See Hartleip v. McNeilab, Inc*., 83 F.3d 767, 778–79 (6th Cir. 1996) ("Although her legal theories must be rejected as thinly supported by the facts, we conclude that the denial of sanctions was not an abuse of discretion.").

Further, "[a]n attorney cannot be sanctioned [ ] for failing to withdraw a claim that later proves to be groundless, provided that the attorney[ ] ... did not decline to withdraw it upon an express request by his or her adversary after learning that it was groundless." *Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp*., 854 F.2d 1452, 1472 (2d Cir. 1988), *rev'd in part sub nom. Pavelic & LeFlore v. Marvel Entm't Grp*., 493 U.S. 120 (1989); *see O'Malley v. New York City Transit Auth*., 896 F.2d 704, 709 (2d Cir.1990) ("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a rule 11 sanction.").

11

Although there is no time limit to file a Rule 9011 motion, the "motion should be served promptly after the inappropriate paper is filed and, if delayed too long, may be viewed as untimely." FED. R. CIV. P. 11, Adv. Comm. Note 1993 Amend.; *see Team Obsolete Ltd. v. A.H.R.MA. Ltd.,* 216 F.R.D. 29, 44 (E.D.N.Y. 2003) (denying a Rule 11 motion in part because the movant waited over a year after the alleged sanctionable conduct, evidencing that the claims were not patently frivolous).

The movant must comply with the safe-harbor requirement of Rule 9011(c)(1)(A) in order to receive relief. The purpose of the safe-harbor provision is to provide the opposing party an opportunity to withdraw the paper that is the basis of the sanctions. Importantly, "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 175 (2d Cir. 2012). As recently discussed by this Court, Rule 9011(c) is "a strict procedural requirement and the failure of the party requesting sanctions to serve a copy of the sanctions motion on the opposing party at least twenty-one days prior to filing the motion with the court will, in and of itself, preclude the imposition of sanctions under Bankruptcy Rule 9011." *Glassman v. Feldman (In re Feldman),* 606 B.R 189, 198 (Bankr. E.D.N.Y. 2019) (internal quotations omitted).

Once it is determined that a party has violated Rule 9011, it is within the discretion of the court to impose sanctions upon the offender. *In re Parikh,* 508 B.R. 572, 584 (Bankr. E.D.N.Y. 2014); *see Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir.2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion."). Because the rule is designed to

deter rather than compensate, any sanctions imposed should be no greater than necessary to effectuate the goal of deterrence. *In re Reyes*, No. 14-13233(SMB), 2015 WL 4624156, at *6 (Bankr. S.D.N.Y. Aug. 4, 2015).

## DISCUSSION

### I.    <u>Allegations</u>

The Debtors argue that Kipiniak and J.C. Ryan should be sanctioned (i) for failing to withdraw J.C. Ryan's Proofs of Claim in the Debtors' bankruptcy cases, and (ii) for failing to withdraw the Non-Dischargeability Actions. The Debtors state that Kipiniak and J.C. Ryan "chose to close their eyes to the overwhelming evidence of fraud" and that Kipiniak did not inquire into the accuracy of the information relating to the Proofs of Claim and the Non-Dischargeability Actions. Motion ¶ 5.  The Debtors also argue that Kipiniak failed to disclose all available discovery in J.C. Ryan's possession.

The Opposition argues that the Motion is moot, untimely, and baseless. Objection at 1. They contend that the Motion is moot because J.C. Ryan dismissed the Non-Dischargeability Actions and filed motions to withdraw its Proofs of Claim on a provisional basis in July 2018. *Id.* at 11. Regarding timeliness, the Opposition highlights that the Motion was not appropriately served until about two years after the alleged misconduct occurred, and after Kipiniak had stepped down as lead counsel. *Id.* at 9-10. Further, the Opposition urges that the Motion is meritless because neither Kipiniak nor J.C. Ryan signed the Proofs of Claim nor the complaints in the Non-Dischargeability Actions. *Id.* at 12. They also contend that the Proofs of Claim and Non-Dischargeability Actions were not frivolous, highlighting that fraud has never been found in State Court, and even though the Default Judgment has been vacated, it was not done so on the basis of

fraud. *Id.* at 13. In her declaration, Kipiniak states that she refused to withdraw J.C. Ryan's Proofs of Claim or stipulate to withdraw the Non-Dischargeability Actions "in good faith, and without improper purpose, based on arguments that, among other things, the Court should enforce the May 12, 2008 Judgment based on the *Rooker-Feldman* doctrine and res judicata/collateral estoppel principles."   *See* Declaration of Monica Kipiniak ¶ 7, 11, Case No. 14-41439, ECF No. 332; Declaration of Monica Kipiniak ¶ 7, 11, Case No. 14-41440, ECF No. 279.

## II.    <u>Application</u>

As a preliminary matter, the Court finds that the Motion for Sanctions is not procedurally moot. Although the Proofs of Claim were provisionally withdrawn and counsel to J.C. Ryan filed a notice to dismiss the Non-Dischargeability Actions, Kipiniak and J.C. Ryan can still be sanctioned under Rule 9011 because the withdrawals occurred after the twenty-one day safe-harbor period expired. Further, case law supports the conclusion that Rule 9011 sanctions can be imposed even if a matter is dismissed or voluntarily withdrawn. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–97 (1990), *partially superseded by statute* ("It is well established that a federal court may consider collateral issues after an action is no longer pending . . . . Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action . . . Such a determination may be made after the principal suit has been terminated.");[10] *de la Fuetne v. DCI Telecommunications, Inc.*, 259 F.Supp.2d 250, 257–58 (S.D.N.Y. 2003)

---

[10] Rule 9011 has been amended to include the safe-harbor provision since the Supreme Court's decision in *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384 (1990). While "a court can no longer issue Rule 11 sanctions in a case where, as in *Cooter & Gell*, a complaint was voluntarily dismissed within 21 days of a request for Rule 11 sanctions," a court may still impose sanctions under Rule 9011(b) despite a voluntary withdrawal, if the withdrawal occurred after the safe-harbor period expires. *See de la Fuetne*, 259 F.Supp.2d at 257 n.4.

(finding a sanctions motion not procedurally moot even though the plaintiff voluntarily sought dismissal). As such, this Court will consider the merits of the Motion.

### A. The Claims' Chance of Success

Even in cases where a party did not sign a paper presented to the Court, the party may be sanctioned pursuant to Rule 9011 if he or she "later advocated" the paper and it was "patently clear that a claim ha[d] absolutely no chance of success." *In re Spectee Group, Inc*., 185 B.R. at 159. Moreover, an attorney or party may be liable for failing to withdraw a claim under Rule 9011 if they "learn[ed] it was groundless." *See Calloway*, 854 F.2d at 1472. Although Kipiniak and J.C. Ryan neither signed the Proofs of Claim nor the complaints in the Non-Dischargeability Actions, Kipiniak acknowledges that she continued to represent J.C. Ryan with respect to these papers, appearing and arguing at status conferences, and participating in discovery, through October 2016.

However, prior to October 2016, it was not patently clear that the Proofs of Claim and the Non-Dischargeability Actions had absolutely no chance of success or were groundless. Importantly, during Kipiniak's stint as lead counsel, the Proofs of Claim and Non-Dischargeability Actions were based on a valid judgment that the State Court had upheld *three times*, including a decision just days after Kipiniak was retained that explicitly rejected a motion to vacate based on fraud. *See* Schoenfeld Decl. Ex. 20.  While the Debtors contend that the Default Judgment was procured through deceptive means, this has never been proven before a court, and the Opposition vehemently disagrees that the facts surrounding the alleged fraud in the State Court Action are "undisputed." Objection at 3–4.

Because it is not patently clear that the claims had no chance of success, it cannot be said that they were groundless. Thus, Kipiniak and J.C. Ryan were under no obligation to withdraw the

Proofs of Claim or the Non-Dischargeability Actions during Kipiniak's time as lead counsel. This case can be distinguished from *Fuerst v. Fuerst*, where the District Court for the Eastern District of New York found that sanctions under Rule 11 were appropriate where an attorney failed to withdraw a complaint. 832 F.Supp.2d 210, 220 (E.D.N.Y. 2011). There, the parties previously signed a settlement agreement that released the claims brought in the complaint, causing the court to find that the complaint was groundless, as there was no longer a legal or factual basis to assert the causes of action. *See id.* Here, the Default Judgment was still in place at the time Kipiniak was lead counsel, and thus there was still a legal and factual basis to maintain the Proofs of Claim and the Non-Dischargeability Actions. As such, the actions of Kipiniak and J.C. Ryan were objectively reasonable pursuant to the Rule 9011(b) standard. *See In re Beinhauer*, 570 B.R. at 137. Consequently, the Court does not find sanctions appropriate under Rule 9011(b).

      B.   *Timeliness of the Rule 9011 Motion*

      This Court also finds that the Motion is untimely as to Kipiniak. Although the Debtors sent Kipiniak the Demand Letter on November 16, 2015, the Debtors did not properly comply with Rule 9011(c) until they served the Motion on April 28, 2018, which is eighteen months after Kipiniak was active in this matter. *See Star Mark Mgmt., Inc.* 682 F.3d at 175 ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period.").  This conclusion is supported by this jurisdiction's recent holding in *Goodwin v. MTA Bus Co.* where the court found that Rule 11 sanctions were improper, in part, because the moving party waited approximately two years after the alleged sanctionable conduct to file the sanctions motion and the attorney they were seeking to sanction had already withdrawn from the case. 2017 U.S. Dist. LEXIS 41555, at *10 (E.D.N.Y. Mar. 22, 2017). The

court explained that awarding sanctions would "defeat the goal, apparent from the text of Rule 11(c)(2) of streamlining litigation by allowing the party in the wrong the first opportunity to withdraw an offending paper." *Id.* (internal quotations omitted). While it is true that Kipiniak never filed a formal notice of withdrawal, the record reflects she did not appear and argue on behalf of J.C. Ryan on any matters after October 2016. Even if the Debtors met the Rule 9011(b) standard, Kipiniak was no longer suited, in April 2018, to withdraw the Proofs of Claim and the Non-Dischargeability Actions. *See In re Pennie & Edmonds LLP,* 323 F.3d 86, 89 (2d Cir. 2003) ("[M]otions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission.").

The Debtors respond by arguing that the Motion was timely because there had been no written decision on the *summary judgment motion* that sought to expunge J.C. Ryan's Proof of Claim in Fierro's case, and sanctions under Rule 9011 are usually determined at the end of litigation. Debtors' Reply at 12, Case No. 14-41439, ECF No. 337; Debtors' Reply at 12, Case No. 14-41440 ECF No. 286. However, this argument is misguided because the Debtors have not properly sought sanctions against Kipiniak for filing the summary judgment opposition. While Kipiniak's response is a paper that she signed, the Debtors cannot seek sanctions for this act because this allegation was not included in the motion served on the Opposition on April 28, 2018 as part of the safe-harbor requirement. *See In re Feldman*, 606 B.R at 198. As noted above, the purpose of the safe-harbor provision is to provide the opposing party an opportunity to withdraw the alleged baseless claim. As such, it would be contrary to the Rule's policy to allow a movant to seek sanctions for a claim without having first complied with the safe-harbor provision with respect to that allegation.

17

*See Nardoni v. City of N.Y.,* 17 Civ. 2695 (GHW) (GWG), 2019 WL 542349, *5 (S.D.N.Y. Feb. 12, 2019) (noting that the safe-harbor must specify the conduct for which sanctions are sought because "otherwise, the Rule 11 movant would have carte blanche to seek sanctions for any conduct, even conduct for which the non-movant had not been provided notice").

    C. *Application of Rule 9011 to Disclosures and Discovery Requests*

The Debtors also argue that Kipiniak and J.C. Ryan may be sanctioned under Rule 9011 because Kipiniak failed to produce all available discovery in J.C. Ryan's possession, citing Alan Rosenthal's comments during the January 2016 deposition. Motion ¶ 24. However, it is inappropriate to analyze this conduct under Rule 9011 because by its terms, Rule 9011 does not "apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 7026 through 7037." FED. R. BANK. P. 9011(d); *see Baffa v. Donaldson*, 222 F.3d 52, 57–58 (2d Cir. 2000) ("Subsection (d) excludes from the purview of Rule 11 sanctions, discovery responses and motions that are subject to the provisions of Rules 26 through 37 of the Federal Rules of Civil Procedure.").

## CONCLUSION

For the reasons set forth above, the Debtors' Motion to Sanction pursuant to Rule 9011 is DENIED.

**Dated: March 31, 2020**
      **Brooklyn, New York**

                          **Nancy Hershey Lord**
                      **United States Bankruptcy Judge**